LITTLER MENDELSON, P.C.
Dennis M. Brown (*pro hac vice* admission pending)
Henry Lederman
Michael P. Pappas
900 Third Avenue
New York, New York 10022-3298
(212) 583-9600

Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LORI MCDONALD, individually and on behalf of
all others similarly situated,

               Plaintiff,

       v.

CIGNA CORPORATION and INTRACORP,

             Defendants.

Case No: 10 CV 6498 (CM)

ECF Case

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
TO COMPEL ARBITRATION AND TO DISMISS OR STAY THE ACTION**

---

# TABLE OF CONTENTS

PAGE

INTRODUCTION .......................................................................................1

NATURE OF CLAIMS AND SUMMARY OF ARGUMENT....................................1

FACTS................................................................................................2

ARGUMENT............................................................................................1

I.     THE FEDERAL ARBITRATION ACT MANDATES THE  ENFORCEMENT
       OF MCDONALD'S AGREEMENT TO ARBITRATE ...................................8

       A.     There is an Agreement to Arbitrate ........................................9

       B.     McDonald's Claims Fall Within the Scope of Her Arbitration Agreement.........11

       C.     McDonald's Statutory Claims Are Arbitrable.....................................13

II.    PLAINTIFF MUST ARBITRATE HER CLAIMS AS AN INDIVIDUAL  AND
       IS PRECLUDED FROM PURSUING CLAIMS IN ARBITRATION  ON A
       CLASS, COLLECTIVE, OR REPRESENTATIVE BASIS...........................14

III.   MCDONALD'S ACTION SHOULD BE STAYED OR DISMISSED..........................20

CONCLUSION ......................................................................................20

**TABLE OF AUTHORITIES**

PAGE(S)

<u>CASES</u>

*14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009) .................................................16

*Arakawa v. Japan Network Group*, 56 F. Supp. 2d 349 (S.D.N.Y. 1999) ..................10

*Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299 (S.D.N.Y. 2010) ....................13, 14

*AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010) ........................................16

*Banus v. Citigroup Global Markets, Inc.*, 2010 U.S. Dist. LEXIS 40072 (S.D.N.Y. Apr. 23, 2010)..................................................................................................................19

*Bar-Ayal v. Time Warner Cable Inc.*, 2006 U.S. Dist. LEXIS 75972 (S.D.N.Y. Oct. 16, 2006) ..................................................................................................................17

*Beletsis v. Credit Suisse First Boston Corp.*, 2002 U.S. Dist. LEXIS 16586 (S.D.N.Y. Aug. 28, 2002)..................................................................................10, 11

*Brown v. St. Paul Travelers Cos.*, 559 F. Supp. 2d 288 (W.D.N.Y. 2008), *aff'd*, 331 Fed. Appx. 68, 2009 U.S. App. LEXIS 13154 (2d Cir. 2009) ..................10, 11

*Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324 (S.D.N.Y. 2003)..........................2, 13, 14

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)..................................................2

*Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16 (2d Cir. 1995) .....................9, 12

*Curry v. Volt Info. Svcs., Inc.*, 2008 U.S. Dist. LEXIS 20910 (S.D.N.Y. Mar. 18, 2008).............................................................................................................................10

*Dumanis v. Citibank (South Dakota), N.A.*, 2007 U.S. Dist. LEXIS 81586 (W.D.N.Y. Oct. 31, 2007) ....................................................................................17, 19

*Fensterstock v. Educ. Finance Partners*, 611 F.3d 124 (2d Cir. 2010)....................16, 17, 18, 20

*Frankel v. Citicorp Ins. Svcs., Inc.*, 2008 Slip Op 32722U, 2008 N.Y. Misc. LEXIS 10531 (Sup. Ct. Sept. 26, 2008) ..................................................................17

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d Cir. 1987)..............................9

*Genovese v. Goodyear Tire and Rubber Co.*, 2007 U.S. Dist. LEXIS 69461 (E.D.N.Y. Sept. 18, 2007) ..............................................................................................11

*Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420 (S.D.N.Y. 2004) ......................11

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE(S)

*Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991) ....................................2

*Gold v. Deutsche Bank*, 365 F.3d 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 874 (2004)............................................................................................................................8

*Gonzales v. Toscorp*, 1999 U.S. Dist. LEXIS 12109 (S.D.N.Y. Aug. 5, 1999).........................11

*Green v. SuperShuttle Int'l, Inc.*, 2010 U.S. Dist. LEXIS 95235 (D. Minn. Sept. 13, 2010)....................................................................................................................15

*Guyden v. Aetna, Inc.*, 544 F.3d 376 (2d Cir. 2008)...................................................2

*Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008)....................................16

*Hawkins v. Toussaint Capital Partners, LLC*, 2010 U.S. Dist. LEXIS 53264 (S.D.N.Y. May 27, 2010) ..............................................................................13

*In re American Express Merch. Lit.*, 554 F.3d 300 (2d Cir. 2009), *vacated sub nom*, *American Express Co. v. Italian Colors Restaurant*, 130 S. Ct. 2401, 176 L. Ed. 2d 920 (2010)..............................................................................15, 19

*Jock v. Sterling Jewelers, Inc.*, 2010 U.S. Dist. LEXIS 75064 (S.D.N.Y. July 26, 2010)...............................................................................................................15

*Kuchinsky v. Curry*, 2009 U.S. Dist. LEXIS 45390 (S.D.N.Y. May 28, 2009) .........................14

*Manigault v. Macy's East, LLC*, 318 Fed. Appx. 6, 2009 U.S. App. LEXIS 6234 (2d Cir. 2009) ...............................................................................................11

*Martin v. SCI Mgmt., L.P.*, 296 F. Supp. 2d 462 (S.D.N.Y. 2003) .....................................10, 14

*Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995) .................................12

*McFadden v. Clarkeson Research Group, Inc.*, 2010 U.S. Dist. LEXIS 50526 (E.D.N.Y. May 18, 2010) .....................................................................................13

*Mehler v. Terminix Int'l Co.*, 205 F.3d 44 (2d Cir. 2000)....................................12, 13

*Nayal v. HIP Network Svcs. IPA, Inc.*, 620 F. Supp. 2d 566 (S.D.N.Y. 2009) ..........................17

*Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72 (2d Cir. 1998).....................................2, 9, 10, 12, 14

*Perry v. N.Y. Law Sch. & Collegis, Inc.*, 2004 U.S. Dist. LEXIS 14516 (S.D.N.Y. July 27, 2004) ...............................................................................................14

*Perry v. Thomas*, 482 U.S. 483 (1987) .................................................................17

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE(S)

*Pomposi v. Gamestop, Inc.*, 2010 U.S. Dist. LEXIS 1819 (D. Conn. Jan. 11, 2010) .................18

*Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 759 N.Y.S.2d 448 (1st Dep't) ,
    *appeal denied*, 1 N.Y.3d 502, 775 N.Y.S.2d 240 (2003) ........................................................17

*Reid v. SuperShuttle Int'l, Inc.*, 2010 U.S. Dist. LEXIS 26831 (E.D.N.Y. Mar. 22,
    2010)..............................................................................................................................14, 19

*Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010)......................................................16

*Reynolds v. de Silva*, 2010 U.S. Dist. LEXIS 18040 (S.D.N.Y. Feb. 24, 2010) ...............2, 13, 14

*Rompalli v. Portnova*, 2010 U.S. Dist. LEXIS 58289 (S.D.N.Y. May 5, 2010)...............2, 13, 14

*Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90 (2d Cir.), *cert. denied*, 537
    U.S. 1088 (2002) .......................................................................................................................20

*Sherr v. Dell, Inc.*, 2006 U.S. Dist. LEXIS 51864 (S.D.N.Y. July 27, 2006) .......................17, 19

*Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439 (S.D.N.Y. 2004).........................13, 14

*Stender v. Cardwell*, 2010 U.S. Dist. LEXIS 52395 (D. Co. May 12, 2010)...............................15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758,
    176 L. Ed. 2d 605 (2010).........................................................................2, 14, 15, 16, 19

*Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 786 N.Y.S.2d 478 (1st Dep't
    2004), *appeal denied*, 5 N.Y.3d 702, 799 N.Y.S.2d 773 (2005).............................................17

*Vera v. Saks & Co.*, 335 F.3d 109 (2d Cir. 2003).........................................................................9

*Volt Inf. Scis., Inc. v. Board of Trustees*, 489 U.S. 268 (1989) .....................................................16

*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997) ...................................................9, 12

*Xerox Corp. v. Media Scis., Inc.*, 609 F. Supp. 2d 319 (S.D.N.Y. 2009)....................................19

## STATUTES

9 U.S.C. § 1, *et seq.* .................................................................................................................8, 14

9 U.S.C. § 2 ...............................................................................................................................14

9 U.S.C. § 3 .................................................................................................................1, 9, 11, 20

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE(S)

9 U.S.C. § 4 ..............................................................................................1, 9

29 U.S.C. 216(b) .............................................................................................18

N.Y. Labor Law § 198(1-a) ..............................................................................18

## INTRODUCTION

Defendants CIGNA Corporation and Intracorp ("Defendants"), by their attorneys, Littler Mendelson, P.C., respectfully submit this memorandum of law in support of their motion to compel arbitration of the individual claims of Plaintiff Lori McDonald and to stay or dismiss this lawsuit. *See* 9 U.S.C. §§ 3, 4.

## NATURE OF CLAIMS AND SUMMARY OF ARGUMENT

This is a purported collective/class action under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  Plaintiff McDonald, a former employee of International Rehabilitation Associates, Inc. d/b/a Intracorp ("Intracorp"), an indirect subsidiary of CIGNA Corporation, alleges that Defendants misclassified her as "exempt" and unlawfully failed to pay her overtime for hours worked in excess of 40 per week.  (*See* Complaint.)  She seeks relief on behalf of herself and "all others similarly situated." (*Id.*)

Because McDonald and Defendants have expressly agreed to submit her employment-related claims to arbitration, this action must be stayed or dismissed, and arbitration of McDonald's personal claims must be compelled.  When she was hired, McDonald entered into an arbitration agreement with Defendants in which she stated, *inter alia*: "I understand and agree that any dispute between CIGNA and me arising out of or relating to my candidacy for employment, my employment, or termination of my employment with CIGNA shall be resolved under CIGNA's Employment Dispute Arbitration Program which includes final mandatory binding arbitration." (Declaration of Marjorie Stein dated October 26, 2010 ("Stein Dec."), ¶¶ 8-14, Exs. A-E; Declaration of Dina M. Kraus dated October 26, 2010 ("Kraus Dec."), ¶¶ 5-12, Exs. A-D; Declaration of John Enama dated October 26, 2010 ("Enama Dec."), ¶¶ 4-6, Ex. A; Declaration of Joan Clime dated October 27, 2010 ("Clime Dec."), ¶¶ 3-9.)   CIGNA's

Employment Dispute Arbitration Program -- which McDonald agreed to as a condition of employment -- includes a class, collective, and representative action waiver provision.  (Stein Dec., ¶ 12, Exs. D-E.)

It is firmly established that employment arbitration agreements are valid and enforceable, and that statutory wage claims under federal and state law are arbitrable.  *See, e.g., Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991); *Guyden v. Aetna, Inc.*, 544 F.3d 376 (2d Cir. 2008); *Oldroyd v. Elmira Sav. Bank*, 134 F.3d 72 (2d Cir. 1998); *Rompalli v. Portnova*, 2010 U.S. Dist. LEXIS 58289 (S.D.N.Y. May 5, 2010); *Reynolds v. de Silva*, 2010 U.S. Dist. LEXIS 18040 (S.D.N.Y. Feb. 24, 2010); *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324 (S.D.N.Y. 2003).  Accordingly, under applicable law, McDonald's agreement is binding and she must be compelled to arbitrate her claims in this action.  Furthermore, because McDonald's arbitration agreement expressly precludes her from bringing class, collective, or representative claims, she is required to arbitrate her claims individually and not on behalf of anyone else.  *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010).

## FACTS

Throughout her employment at Intracorp, McDonald was employed in New York State. (Complaint, ¶¶ 5, 18.)  Intracorp is an indirect subsidiary of CIGNA Corporation and is one of the CIGNA companies.  (Stein Dec., ¶ 3.)

On November 3, 2009, McDonald was offered employment at Intracorp by way of an offer letter.  (Kraus Dec., ¶¶ 5-6, Exs. A-B.)  The offer letter set forth, among other things, the basic terms of McDonald's employment, such as her position, start date (January 4, 2010), annual compensation, and benefits.  (*Id.*, Ex. A.)  In addition, the letter expressly notified

McDonald that the employment offer was conditioned upon her agreement to be bound by the

CIGNA companies' arbitration program:

> CIGNA has a mandatory alternative dispute resolution program that
> includes an internal grievance process and mandatory arbitration in case of
> employment disputes. ***Your agreement to be bound by the terms and
> conditions of the program is a condition of this offer of employment***.

(*Id.*) (emphasis supplied).

McDonald accepted Intracorp's offer of employment, stating, "I am very excited about

this and I am really looking forward to joining the New York team." (*Id.*, ¶ 7, Ex. C.)  She was

provided remote access to CIGNA's "New Hire Website" in order to complete certain forms and

tasks prior to her official start date:

> Dear Lori:
>
> ... Please access and read CIGNA's New Hire Website and reference the
> New Hire Checklist for important information and tasks you will need to
> complete ***Before Your First Day*** of employment, as well as information
> you will need to bring with you on your first day and provide to your
> manager.
>
> To access the website, please use the following User ID and Password:
>
> User ID – 8593089
>
> Password – Your Home Zip Code
>
> Visit CIGNA's New Hire Website

(*Id.*, ¶ 8, Ex. B) (emphasis in original).

Among the documents McDonald was required to complete via the CIGNA New Hire

Website was a "Handbook Verification" in which she acknowledged her receipt of the CIGNA

Employee Handbook (the "Handbook"), which was available for her to view on the same

Website.  (Kraus Dec., ¶¶ 8-12, Ex. D; Enama Dec., ¶ 4; Stein Dec., ¶¶ 13-14; Clime Dec., ¶¶ 3-

8.)[1]  The "Employee Handbook" section of the Website provided, *inter alia*, that "CIGNA requires that all employees read and electronically accept the Employee Handbook as a condition of employment," and that "[a]ll employees must review the handbook content ... and electronically sign and submit the handbook receipt."  (Kraus Dec., ¶¶ 10-11, Ex. D.)  Thus, McDonald would not have been permitted to continue her employment unless she complied with the requirement that she electronically execute the Handbook acknowledgment.  (Kraus Dec., ¶ 12; Stein Dec., ¶¶ 13-14; Clime Dec., ¶¶ 5-8.)

On December 26, 2009, at 11:49 a.m., McDonald electronically executed the "Handbook Verification" form by pressing "I Agree," and thereby acknowledged both her receipt of the Handbook and her obligation to read and abide by its provisions.  (Stein Dec., ¶ 8, Ex. A; Kraus Dec., ¶ 12; Enama Dec., ¶¶ 5-6, Ex. A; Clime Dec., ¶ 9.)  The Handbook received and acknowledged by McDonald contained a comprehensive "Employment Dispute Resolution Program" that required her to arbitrate any employment-related dispute involving an alleged violation of her legal rights:

> **Arbitration** – ***By accepting employment, compensation and/or benefits, you have agreed to arbitrate*** serious employment-related disagreements between you and the Company.  Your agreement to arbitrate establishes a mutual obligation between you and the Company to be bound by the decision of a neutral arbitrator.  ***Your agreement to arbitrate is a term and condition of your employment*** and can not be changed except in writing, signed by you and the Executive Vice President, Human Resources & Services....   You must go to arbitration rather than going to court to enforce your rights and claims.

---

[1]     The New Hire Website contains a checklist of specific tasks that new hires must complete before being allowed to start their employment, one of which is to "Read and Sign Employee Handbook."  (Kraus Dec., ¶ 9, Ex. D.)  When an individual clicks on the "Read and Sign Handbook" section, they are brought to a page where they can review the Employee Handbook, Code of Ethics and Compliance Policy.  On that page is a "button" for the individual to press stating "Sign the Employee Handbook."  When that button is pressed, the individual is brought to the "Handbook Acknowledgment" page and must press a button stating "I Agree."  (Kraus Dec., ¶ 11, Ex. D; Enama Dec., ¶ 4.)

Your agreement to arbitrate applies to serious employment-related disagreements and problems, which are those that concern a right, privilege, or interest recognized by applicable law. Such serious disputes include but are not limited to claims, demands, or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, **the Fair Labor Standards Act**, the Rehabilitation Act of 1973, the Americans With Disabilities Act, the Family and Medical Leave Act, **and any other** federal, **state**, or local **statute**, regulation, or common law doctrine, regarding employment discrimination, conditions of employment, or termination of employment....

Arbitration is conducted by a neutral third-party arbitrator who is a licensed attorney or has served as a federal or state trial or appellate judge and who is also an expert in employment matters. The arbitration process is administered by the American Arbitration Association (AAA) using the Company's Employment Dispute Arbitration Policy and Employment Dispute Arbitration Rules and Procedures. Except for a filing fee and any expenses associated with depositions, the costs of the arbitration will be paid by the Company unless you want to share in paying the costs. You and the Company agree to be bound by the decision made by the external, neutral arbitrator. The arbitrator chosen by you and the company in accordance with the Company's Employment Dispute Arbitration Rules and Procedures will interpret the agreement of the parties. The arbitrator will have all of the power to award damages that a judge hearing the dispute would have. The significant differences between going to arbitration and going to court are that the Company's Employment Dispute Arbitration Rules and Procedures will be followed instead of the federal or state rules of court procedure, and there will be no jury, so the process typically will be much faster and less expensive.

To begin the Arbitration process, you must submit a demand for arbitration to the Employee Relations Department in the manner required by the Company's Employment Dispute Arbitration Policy and Employment Dispute Arbitration Rules and Procedures. Copies of these documents can be obtained by visiting the *Your CIGNA Life* intranet site. If you are unable to locate the information you are seeking on the intranet site, please contact the *Your CIGNA Life* Service Center at 1.800.551.3539.

(Stein Dec., ¶¶ 9-10, Ex. B) (emphasis supplied).

The CIGNA companies' Employment Dispute Arbitration Policy referenced in the Handbook similarly provided, *inter alia*:

> ***This agreement to arbitrate is a term and condition of the employment relationship*** between an employee and the Company....
>
> This policy covers only serious employment-related disagreements and problems, which are those that concern a right, privilege or interest recognized by applicable law.   Such serious disputes include claims, demands, disputes, controversies or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Equal Pay Act, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act of 1974, ***the Fair Labor Standards Act***, the Rehabilitation Act of 1973, the Americans With Disabilities Act, the Family and Medical Leave Act, theft of trade secrets, unfair competition ***and any other*** federal, ***state***, or local ***statute***, regulation, or common law doctrine, regarding employment discrimination, retaliation, whistle blowing, conditions of employment, trade secrets, unfair competition or termination of employment....   ***By accepting employment, compensation or benefits you have agreed to exclusively use only this Arbitration Policy and the applicable Arbitration Rules and Procedures***.   This means that you and the Company have agreed that all serious employment related disagreements and problems will be resolved solely in arbitration conducted under the Companies' Arbitration Rules and Procedure[s] and that you agree to waive your right to go to a court....

(*Id.*, ¶ 12, Ex. D) (emphasis supplied).

In her Handbook Verification acknowledgment form, McDonald reaffirmed her agreement and understanding regarding her obligation to arbitrate:

> I understand and agree that any dispute between CIGNA and me arising out of or relating to my candidacy for employment, my employment, or termination of my employment with CIGNA shall be resolved under CIGNA's Employment Dispute Arbitration Program which includes final mandatory binding arbitration.

(*Id.*, ¶ 8, Ex. A.)

The CIGNA companies' Employment Dispute Arbitration Rules and Procedures provide for processes and safeguards sufficient to ensure that employees like McDonald have a fair and

adequate opportunity to pursue their claims in arbitration and obtain the same individual relief they could obtain in a court of law, including, *inter alia*: (i) applying the same statute(s) of limitations applicable to claims brought in court; (ii) company payment of all arbitration costs (except for a modest filing fee and expenses for depositions taken by the employee); (iii) the opportunity to be represented by counsel; (iv) requiring that the arbitrator be a neutral party, and be knowledgeable and experienced in employment law and the resolution of employment disputes; (v) the opportunity to select an arbitrator under the American Arbitration Association's ("AAA") struck panel method; (vi) requiring the arbitrator to follow applicable statutory and case law; (vii) requiring the arbitrator to apply the same burdens of proof applicable under federal, state, or local law; (viii) empowering the arbitrator to award all equitable and legal remedies that would be available in court under applicable law; (ix) the opportunity for discovery, including depositions, the exchange of documents and exhibits, and the identification of witnesses; (x) permitting the arbitrator to expand the scope and timing of discovery in his or her discretion; (xi) requiring a written decision setting forth the arbitrator's reasoning; and (xii) the opportunity for judicial review and confirmation in accordance with the Federal Arbitration Act. (*Id.*, Ex. E.)

Additionally, both the Employment Dispute Arbitration Policy and the Employment Dispute Arbitration Rules and Procedures clearly and explicitly prohibit class or collective arbitrations:

> ***No class-wide arbitrations are allowed*** under the CIGNA Companies' Employment Dispute Arbitration Policy or the Rules and Procedures. The arbitrator has no jurisdiction to certify any group of current or former employees, or applicants for employment, as a class in any arbitration proceeding.

(*Id.*, Ex. D) (emphasis supplied).

... Each party seeking resolution of its, his or her claims pursuant to an agreement to arbitrate under these Rules and Procedures must proceed individually. ***There shall be no class or representative actions permitted***. An Arbitrator shall have no authority to hear claims of or award damages to any person or entity who has not initiated arbitration and selected an arbitrator in accordance with these Rules and Procedures. Also, ***an arbitrator shall not have authority to consolidate claims or consider individual claims collectively*** on the ground that such actions promote efficiency or that the individual damages may be too small to proceed economically, except when there is an express agreement between the Company and the employees in writing, or on the stenographic record of the particular arbitration proceeding for which the agreement to proceed collectively is made.

\* \* \*

***The arbitrator has no jurisdiction to certify any group of current or former employees, or applicants for employment as a class*** in any arbitration proceeding.

(*Id.*, Ex. E) (emphasis supplied).

McDonald commenced employment with Intracorp on January 4, 2010, and thereafter received and accepted the compensation, benefits, and other terms and conditions set forth in her offer letter and in Defendants' Handbook, among which was her unequivocal agreement to individually arbitrate employment-related disputes. (Kraus Dec., ¶¶ 5-7, Exs. A-B; Stein Dec., ¶¶ 7-8, 12, Exs. A, D-E.)

Notwithstanding McDonald's clear and express agreement to arbitrate her individual employment-related claims, including, specifically, claims under the FLSA, she filed this action on September 1, 2010, and Defendants are now forced to move to compel arbitration.

## ARGUMENT

### I.   THE FEDERAL ARBITRATION ACT MANDATES THE ENFORCEMENT OF McDONALD'S AGREEMENT TO ARBITRATE

The Federal Arbitration Act ("FAA" or "the Act") requires courts to enforce arbitration agreements, reflecting the federal policy strongly favoring arbitration as a method of alternative dispute resolution. 9 U.S.C. § 1, *et seq.  See also Gold v. Deutsche Bank*, 365 F.3d 144, 147-48

(2d Cir. 2003), *cert. denied*, 543 U.S. 874 (2004); *Vera v. Saks & Co.*, 335 F.3d 109, 116 (2d Cir. 2003) (per curiam); *Collins & Aikman Prods. Co. v. Building Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). The Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed in arbitration on issues as to which an arbitration agreement has been signed." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 844 (2d Cir. 1987) (emphasis in original).

The Second Circuit has articulated four criteria for determining whether to compel arbitration: (1) whether there is an agreement to arbitrate; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable; and (4) if only some of the claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration. *Genesco,* 815 F.2d at 844-52. *See also Oldroyd*, 134 F.3d at 75-76.

In this case, the Second Circuit's criteria for arbitrability are easily met. Therefore, the court must compel McDonald to bring her claims in arbitration. *See* 9 U.S.C. §§ 3, 4. *See also WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997).

### A.     There is an Agreement to Arbitrate

As set forth above, McDonald entered into a written agreement with Defendants in which she expressly agreed to arbitrate "any dispute between CIGNA[2] and me arising out of or relating

---

[2]     The terms "CIGNA" and "CIGNA companies," as used in connection with Defendants' mandatory arbitration policy, are expressly defined in Defendants' Handbook as "CIGNA Corporation and/or its subsidiaries," specifically including McDonald's employer, International Rehabilitation Associates, Inc. (*i.e.* Intracorp). (Stein Dec., ¶ 11, Ex. C.) Additionally, the Employment Dispute Arbitration Policy states: "As used herein 'CIGNA Companies' means CIGNA Corporation and/or its subsidiaries. The 'Company' means the specific CIGNA subsidiary that employs the employee." (*Id.*, ¶ 12, Ex. D.) Plaintiff alleges that Defendants are "joint employers." (Complaint, ¶ 8.)

to my candidacy for employment, my employment, or termination of my employment." (Stein Dec., ¶¶ 8-14, Exs. A-E; Kraus Dec., ¶¶ 5-12, Exs. A-D; Enama Dec., ¶¶ 4-6, Ex. A; Clime Dec., ¶¶ 3-9.)  McDonald's agreement to arbitrate is also contained in her offer letter (which she accepted), in Defendants' Handbook (which she expressly assented to and acknowledged), and in Defendants' Employment Dispute Arbitration Policy referenced therein.  (Kraus Dec., ¶¶ 5-7, Exs. A-C; Stein Dec., ¶¶ 8-12, Exs. A-E.)  Therefore, there was a valid agreement to arbitrate. *See Oldroyd*, 134 F.3d at 74-76 (arbitration clause contained in employee agreement constitutes valid agreement to arbitrate); *Martin v. SCI Mgmt., L.P.*, 296 F. Supp. 2d 462, 466-67 (S.D.N.Y. 2003) (same); *Curry v. Volt Info. Svcs., Inc.*, 2008 U.S. Dist. LEXIS 20910, *2-7 (S.D.N.Y. Mar. 18, 2008) (enforcing arbitration policy contained in employee handbook); *Beletsis v. Credit Suisse First Boston Corp.*, 2002 U.S. Dist. LEXIS 16586, *8-9 (S.D.N.Y. Aug. 28, 2002) ("Courts in this district routinely uphold arbitration agreements contained in employee handbooks....") (citing, *e.g.*, *Arakawa v. Japan Network Group*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999)).

Indeed, even if McDonald had not executed the Handbook Verification form (which is not the case here), she would nevertheless be bound by the arbitration program because: (i) she was on notice of Defendants' mandatory arbitration policy by virtue of her offer letter, which she accepted by commencing employment; and (ii) the Handbook was made available to all employees on the CIGNA companies' "*Your CIGNA Life*" Intranet site (as were the Employment Dispute Arbitration Policy and Employment Dispute Arbitration Rules and Procedures), and McDonald's continued employment at Intracorp constituted her assent to its terms.  (Kraus Dec., ¶¶ 5-7, Exs. A-C; Stein Dec., ¶¶ 6, 8, 12; Enama Dec., ¶ 4.)  *See Brown v. St. Paul Travelers Cos.*, 559 F. Supp. 2d 288, 291 (W.D.N.Y. 2008) (arbitration may be compelled in absence of

signed acknowledgment where Handbook containing arbitration policy was widely available and plaintiff "continue[d] to work after [its] promulgation....") (citing *Beletsis*, 2002 U.S. Dist LEXIS 16586, and *Gonzales v. Toscorp*, 1999 U.S. Dist. LEXIS 12109 (S.D.N.Y. Aug. 5, 1999)), *aff'd*, 331 Fed. Appx. 68, 2009 U.S. App. LEXIS 13154 (2d Cir. 2009); *Manigault v. Macy's East, LLC*, 318 Fed. Appx. 6, 7-8, 2009 U.S. App. LEXIS 6234, *3-5 (2d Cir. 2009) (same).[3] *See also Genovese v. Goodyear Tire and Rubber Co.*, 2007 U.S. Dist. LEXIS 69461, *19-20 (E.D.N.Y. Sept. 18, 2007) (posting policy on company Intranet constitutes adequate notice to employees); *Geromanos v. Columbia Univ.*, 322 F. Supp. 2d 420, 430-31 (S.D.N.Y. 2004) (employee deemed to have notice of policy contained in "online employee handbook").

Further, even if McDonald had never reviewed the Handbook at all she would still be bound by its terms (including the arbitration policy) because she was expressly advised to "access and read CIGNA's New Hire Website," which instructed her to read the Handbook, notified her that it "contains important terms of employment," and provided a link to the Handbook. (Kraus Dec., ¶¶ 8-11, Exs. B, D; Enama Dec., ¶ 4.) *See Brown*, 331 Fed. Appx. at 69-70, 2009 U.S. App. LEXIS 13154 at *3-5 (employee who did not acknowledge or recall receiving handbook is bound by arbitration provision where company advised employees "that they were responsible for reading and understanding all company employment policies.").

## B.   McDonald's Claims Fall Within the Scope of Her Arbitration Agreement

In accordance with the strong federal policy favoring arbitration, courts "will construe arbitration clauses as broadly as possible, resolving any doubts concerning the scope of arbitrable

---

[3]      The FAA "does not require that the parties sign a written acknowledgment of an arbitration agreement; it mandates only that the agreement itself be in writing." *Brown*, 559 F. Supp. 2d at 291 (citing 9 U.S.C. § 3). Thus, "it is well-settled that a non-signatory party may be subject to an arbitration agreement if her subsequent conduct indicates that she has assumed the obligation to arbitrate." *Id.*

issues ... in favor of arbitration." *Oldroyd*, 134 F.3d at 76 (quoting *Collins & Aikman*, 58 F.3d at 19). *See also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.").

The "existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that it covers the asserted dispute." *Oldroyd*, 134 F.3d at 76. *See also Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000) (same) (citing *Collins & Aikman*, 58 F.3d at 19), *cert. denied*, 533 U.S. 911 (2001); *WorldCrisa Corp.* 129 F.3d at 74 (same).

The arbitration clause contained in McDonald's agreement represents a prototypically broad arbitration provision.  It provides that "*any* dispute ... *arising out of or relating to ... my employment*" is subject to arbitration.  (Stein Dec., ¶ 8, Ex. A) (emphasis supplied).[4]  The Second Circuit has held that this is "precisely the kind of broad arbitration clause that justifies a presumption of arbitrability."  *Oldroyd*, 134 F.3d at 76 (clause in employment agreement requiring arbitration of "any dispute, controversy or claim arising under or in connection with this Agreement" creates presumption of arbitrability of employment-related claims).  *See also Mehler*, 205 F.3d at 49-50 (clause providing for arbitration of "any controversy or claim ... arising out of or relating to" agreement is "a classically broad one"); *Collins & Aikman*, 58 F.3d at 20 (clause requiring arbitration of "[a]ny claim or controversy arising out of or relating to this agreement" is "the paradigm of a broad clause.").

---

[4]     Similarly, the Handbook and the Employment Dispute Arbitration Policy broadly provide for arbitration of any "employment related disagreements and problems" that "concern a right, privilege or interest recognized by applicable law."  (Stein Dec., ¶¶ 9-10, 12, Exs. B, D.)

Accordingly, McDonald's claims are presumptively arbitrable unless it can be said with "positive assurance" that her arbitration agreement is not subject to *any* interpretation that brings those claims within its scope. Clearly, that is not the case. On the contrary, McDonald's claims for failure to pay overtime compensation unquestionably relate to her employment, and are, therefore, squarely within the scope of her arbitration agreement. *See Rompalli*, 2010 U.S. Dist. LEXIS 58289 at *16-17 (wage claims fall within scope of agreement to arbitrate employment-related disputes); *Reynolds*, 2010 U.S. Dist. LEXIS 18040 at *8-12 (same); *Arrigo v. Blue Fish Commodities, Inc.*, 704 F. Supp. 2d 299, 303-04 (S.D.N.Y. 2010) (same); *Ciago*, 295 F. Supp. 2d at 331 (same). *See also Mehler*, 205 F.3d at 49 ("[I]ssues will be deemed arbitrable unless it is clear that the arbitration clause has not included them."). Even if there were any doubt as to whether McDonald's wage claims fall within the scope of her arbitration agreement (and there is none), such doubt is conclusively resolved by the arbitration policy set forth in Defendants' Handbook and Employment Dispute Arbitration Policy, to which McDonald assented, which provide that the "agreement to arbitrate applies to ... claims, demands, or actions under ... ***the Fair Labor Standards Act*** ... and any other ... ***state*** ... ***statute*** ... regarding ... conditions of employment...." (Stein Dec., ¶¶ 9-10, 12, Exs. B, D) (emphasis supplied). *See Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 444-45 (S.D.N.Y. 2004) (compelling arbitration of overtime claim where arbitration provision expressly included FLSA claims). Thus, it is beyond cavil that McDonald's wage claims fall within the scope of her arbitration agreement.

**C.    McDonald's Statutory Claims Are Arbitrable**

It is well-settled that wage claims under the FLSA and NYLL are arbitrable. *See, e.g., Hawkins v. Toussaint Capital Partners, LLC*, 2010 U.S. Dist. LEXIS 53264, *1, 13-14 (S.D.N.Y. May 27, 2010) (NYLL); *McFadden v. Clarkeson Research Group, Inc.*, 2010 U.S.

Dist. LEXIS 50526, *1, 17 (E.D.N.Y. May 18, 2010) (FLSA); *Rompalli*, 2010 U.S. Dist. LEXIS 58289 at *17-18 (FLSA); *Reid v. SuperShuttle Int'l, Inc.*, 2010 U.S. Dist. LEXIS 26831, *2-3, 14-16 (E.D.N.Y. Mar. 22, 2010) (FLSA and NYLL); *Reynolds*, 2010 U.S. Dist. LEXIS 18040 at *12-14 (FLSA and NYLL); *Arrigo*, 704 F. Supp. 2d at 304 (FLSA); *Kuchinsky v. Curry*, 2009 U.S. Dist. LEXIS 45390, *2-3, 12 (S.D.N.Y. May 28, 2009) (NYLL); *Perry v. N.Y. Law Sch. & Collegis, Inc.*, 2004 U.S. Dist. LEXIS 14516, *1, 14-15 (S.D.N.Y. July 27, 2004) (FLSA); *Sinnett*, 319 F. Supp. 2d at 445 (FLSA); *Martin*, 296 F. Supp. 2d at 467 (FLSA); *Ciago*, 295 F. Supp. 2d at 326, 332 (FLSA and NYLL).   Therefore, McDonald's statutory wage claims are subject to arbitration.[5]

## II.   PLAINTIFF MUST ARBITRATE HER CLAIMS AS AN INDIVIDUAL AND IS PRECLUDED FROM PURSUING CLAIMS IN ARBITRATION ON A CLASS, COLLECTIVE, OR REPRESENTATIVE BASIS

The United States Supreme Court recently held that when an arbitration agreement is governed by the FAA (as is the one at issue here),[6] class wide arbitration is <u>forbidden</u> unless it is explicitly permitted under the agreement.  *Stolt-Nielsen*, 130 S. Ct. at 1776.  Here, the parties' arbitration agreement not only fails to permit class arbitration, but expressly and unequivocally prohibits it:

> ***No class-wide arbitrations are allowed*** under the CIGNA Companies' Employment Dispute Arbitration Policy or the Rules and Procedures. The arbitrator has no jurisdiction to certify any group of current or former employees, or applicants for employment, as a class in any arbitration proceeding.

(Stein Dec., ¶ 12, Ex. D) (emphasis supplied).

---

[5]     The fourth part of the Second Circuit's inquiry, *i.e.* whether non-arbitrable claims should be stayed pending arbitration, is inapplicable here because all of McDonald's claims are arbitrable.  *See Oldroyd*, 134 F.3d at 76.

[6]     Plaintiff concedes that CIGNA Corporation and Intracorp operate in interstate commerce, and thus the arbitration agreement is governed by the FAA.  9 U.S.C. §§ 1, 2.  (*See* Complaint ¶¶ 6-7.)  Plaintiff seeks certification of a nationwide FLSA collective class.  (*Id.*, ¶ 14.)

> ... Each party seeking resolution of its, his or her claims pursuant to an agreement to arbitrate under these Rules and Procedures must proceed individually. ***There shall be no class or representative actions permitted***. An Arbitrator shall have no authority to hear claims of or award damages to any person or entity who has not initiated arbitration and selected an arbitrator in accordance with these Rules and Procedures. Also, ***an arbitrator shall not have authority to consolidate claims or consider individual claims collectively*** on the ground that such actions promote efficiency or that the individual damages may be too small to proceed economically, except when there is an express agreement between the Company and the employees in writing, or on the stenographic record of the particular arbitration proceeding for which the agreement to proceed collectively is made.

(*Id.*, Ex. E) (emphasis in original). Under *Stolt-Nielson*, this language controls, and precludes McDonald from pursuing her claims in arbitration on a class, collective, or representative basis.[7] *See Jock v. Sterling Jewelers, Inc.*, 2010 U.S. Dist. LEXIS 75064, *7-22 (S.D.N.Y. July 26, 2010) (applying *Stolt-Nielsen* and holding that class arbitration was precluded where arbitration agreement did not expressly allow it); *Green v. SuperShuttle Int'l, Inc.*, 2010 U.S. Dist. LEXIS 95235, *6-9 (D. Minn. Sept. 13, 2010) (upholding class action arbitration waiver under *Stolt-Nielsen*); *Stender v. Cardwell*, 2010 U.S. Dist. LEXIS 52395, *15-16 (D. Co. May 12, 2010) (relying on *Stolt-Nielsen* and upholding arbitration agreement that effectively precluded class arbitration).

Fundamentally, as reiterated in *Stolt-Nielsen*, "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'"

---

[7]     In light of the holding in *Stolt-Nielsen*, the Supreme Court recently vacated and remanded the Second Circuit's decision in *In re American Express Merch. Lit.*, 554 F.3d 300 (2d Cir. 2009), which had held that a class action arbitration waiver in a commercial credit card agreement was unenforceable under "the federal substantive law of arbitration" because it would effectively prevent enforcement of antitrust laws. *See American Express Co. v. Italian Colors Restaurant*, 130 S. Ct. 2401, 176 L. Ed. 2d 920 (2010). Thus, to the extent the Second Circuit's narrow holding in *American Express* would have had any applicability to this case (and it would not), it is no longer good law after *Stolt-Nielsen*.

130 S. Ct. at 1773 (quoting *Volt Inf. Scis., Inc. v. Board of Trustees*, 489 U.S. 268, 479 (1989)). *Accord Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010). Thus, "parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate, so too may they specify by contract the rules under which that arbitration will be conducted." *Volt*, 489 U.S. at 479. And, in this regard, "procedure" is one of the "features of arbitration" that "the FAA lets parties tailor ... by contract." *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 586 (2008). Accordingly, because fidelity to the terms of an arbitration agreement is the paramount concern of the FAA, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen*, 130 S. Ct. at 1774-1775 (emphasis in original).[8]

The Second Circuit's decision in *Fensterstock v. Educ. Finance Partners*, 611 F.3d 124 (2d Cir. 2010), does not alter the outcome Defendants seek here. In that case, the court invalidated a class action arbitration waiver in a student loan promissory note on the ground that it was unconscionable *under California law*, which has a long-standing antipathy to enforcing arbitration agreements that would prevent class arbitration. *Id.* at 132-38.[9] Because McDonald

---

[8]     Moreover, the "recognition that arbitration procedures are more streamlined than federal litigation is not a basis for finding the forum somehow inadequate; the relative informality of arbitration is one of the chief reasons that parties select arbitration." *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1471 (2009).

[9]     The agreement in *Fensterstock* was expressly governed by California law, "without regard to conflict of laws rules." 611 F.3d at 132-33. *Fensterstock* did not address whether California law was preempted by the FAA. Whether California's arbitration-negating policies withstand FAA preemption is a matter currently before the Supreme Court. *See AT&T Mobility LLC v. Concepcion*, 130 S. Ct. 3322 (2010). It seems likely that the Court will answer this question in the negative because *Stolt-Nielsen* rejected reliance on perceived "public policy" to thwart enforcement of arbitration agreements in accordance with their express terms. *See Stolt-Nielsen*, 130 S. Ct. at 1767-70, 1773-75.

resides and was employed in New York State, the arbitration agreement in this case is governed by New York law, which expressly holds that class action waivers are <u>not</u> unconscionable and do <u>not</u> violate any public policy.[10]  *Tsadilas v. Providian Nat'l Bank*, 13 A.D.3d 190, 191, 786 N.Y.S.2d 478, 480 (1st Dep't 2004) ("Under New York law, 'a contractual proscription against class actions ... is neither unconscionable nor violative of public policy.'"), *appeal denied*, 5 N.Y.3d 702, 799 N.Y.S.2d 773 (2005); *Ranieri v. Bell Atl. Mobile*, 304 A.D.2d 353, 354, 759 N.Y.S.2d 448 (1st Dep't) (same), *appeal denied*, 1 N.Y.3d 502, 775 N.Y.S.2d 240 (2003); *Frankel v. Citicorp Ins. Svcs., Inc.*, 2008 Slip Op 32722U, 2008 N.Y. Misc. LEXIS 10531, *5 (Sup. Ct. Sept. 26, 2008) (same).  *See also Nayal*, 620 F. Supp. 2d at 573 ("Courts applying New York law ... have uniformly held that class action waivers are not unconscionable.") (distinguishing California law); *Bar-Ayal v. Time Warner Cable Inc.*, 2006 U.S. Dist. LEXIS 75972, *60-61 (S.D.N.Y. Oct. 16, 2006) (arbitration agreement that "eliminat[ed] the possibility of bringing class actions" not unconscionable under New York law); *Sherr v. Dell, Inc.*, 2006 U.S. Dist. LEXIS 51864, *17-22 (S.D.N.Y. July 27, 2006) (distinguishing California law and holding that class action waivers are not unconscionable); *Dumanis v. Citibank (South Dakota), N.A.*, 2007 U.S. Dist. LEXIS 81586, *6-8 (W.D.N.Y. Oct. 31, 2007) (characterizing California law on class action waivers as "minority position," and holding that such waivers are not unconscionable).  Thus, unlike in *Fensterstock*, there is no state law contractual defense available

---

[10]     Questions of unconscionability are determined according to the state law applicable to the arbitration agreement at issue -- here, New York. *Nayal v. HIP Network Svcs. IPA, Inc.*, 620 F. Supp. 2d 566, 570-71 (S.D.N.Y. 2009).  However, the Supreme Court has warned, "Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot." *Perry v. Thomas*, 482 U.S. 483, 492 n. 9 (1987).

to McDonald that would invalidate her class action waiver on the grounds of public policy or unconscionability. *See id.*

Second, while *Fensterstock's* California underpinnings have no place in the analysis of McDonald's arbitration agreement, in any event it is highly distinguishable on its facts. Following the California mode of analysis, inapplicable here, *Fensterstock* involved a standardized consumer contract of adhesion (student loan promissory notes), and the amount of damages suffered by each plaintiff was very small ($200-$300 or less). 611 F.3d at 138-39. Furthermore, the defendant, Education Finance Partners, was alleged to have engaged in a deliberate "scheme to cheat large numbers of borrowers out of individually small sums of money." *Id.* Because there was no statutory or other means for plaintiffs to recoup their attorneys' fees or arbitration costs, the court found that the "[b]orrowers ... could not be expected to bring suit individually with respect to such small sums," and that the class action waiver effectively denied consumers any way to recover. *Id.* (class action waiver was akin to a "get out of jail free card" for company and "compromis[ed] important consumer rights.").

Here, however, the arbitration agreement is entered into between an employer and employee, and the employee has a meaningful choice of either accepting arbitration as a condition of employment, or declining employment and working elsewhere.  Even more significantly, the sums involved (unpaid overtime wages over a six-year period) are not "very small," and arbitration would not be prohibitively expensive given that: (i) these are relatively straightforward wage claims that would not require expert analysis; (ii) virtually all of the costs of arbitration are being paid by Defendants; and (iii) both the FLSA and NYLL provide for recovery of attorneys' fees by a prevailing plaintiff (*see* 29 U.S.C. 216(b); N.Y. Labor Law § 198(1-a)). *See Pomposi v. Gamestop, Inc.*, 2010 U.S. Dist. LEXIS 1819, *18-23 (D. Conn. Jan.

11, 2010) (enforcing class/collective action arbitration waiver in FLSA case where plaintiff "failed to meet [his] burden of showing that the disparity between potential recovery and potential costs [is] so great that this case could not be effectively prosecuted on an individual basis.") (citing, *e.g.*, *Xerox Corp. v. Media Scis., Inc.*, 609 F. Supp. 2d 319, 328 (S.D.N.Y. 2009)); *Banus v. Citigroup Global Markets, Inc.*, 2010 U.S. Dist. LEXIS 40072, *27-32 (S.D.N.Y. Apr. 23, 2010) (enforcing class action waiver where plaintiff failed to demonstrate that arbitration would be disproportionately costly); *Reid*, 2010 U.S. Dist. LEXIS 26831 at *5-10 (same). Thus, this is not a case where "an inability to pursue arbitration on a class basis would be tantamount to an inability to assert [the] claims at all." *In re American Express Merch. Lit.*, 554 F.3d at 302 n.1. In short, because arbitration under Defendants' program would cost an employee almost nothing, there is no disincentive for McDonald or other employees to bring their claims individually, even if they do not involve large sums.

No matter what California's minority view[11] might otherwise provide, the FAA mandates that the express, contractual prohibition on class, collective, or representative arbitration contained in McDonald's arbitration agreement with Defendants must be enforced. This Court therefore should follow *Stolt-Nielsen* and the unbroken line of Supreme Court cases upholding the FAA's fundamental principle that arbitration agreements must be enforced in accordance with their terms. Thus, McDonald should be compelled to bring her claims in arbitration solely on an individual basis, and this case should be stayed or dismissed.

Finally, although the arbitration agreement must be enforced as written, if the court were to disagree, it still could not send the parties to class arbitration because "the parties did not agree

---

[11]    *See, e.g., Sherr*, 2006 U.S. Dist. LEXIS 51864 at *17-22, and *Dumanis*, 2007 U.S. Dist. LEXIS 81586 at *6-8, *supra*, distinguishing California's outlying cases.

that arbitration could proceed on such a basis...." *Fensterstock*, 611 F.3d at 141. Rather, both the express terms of the agreement and governing law require McDonald to arbitrate her personal claims only and mandate the stay or dismissal of her lawsuit, including the class and collective claims she seeks to litigate in court.

## III.   McDONALD'S ACTION SHOULD BE STAYED OR DISMISSED

In addition to compelling arbitration, the court has the option of dismissing the action outright or staying the action pending completion of the arbitration. In *Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir.), *cert. denied*, 537 U.S. 1088 (2002), the Second Circuit advised:

> We urge district courts in these circumstances to be as clear as possible about whether they truly intend to dismiss an action or mean to grant a stay pursuant to 9 U.S.C. § 3, which supplies that power, or whether they mean to do something else entirely. Courts should be aware that a dismissal renders an order appealable under § 16(a)(3), while the granting of a stay is an unappealable interlocutory order under 16(b).... Unnecessary delay of the arbitral process through appellate review is disfavored.

Defendants have requested, in the alternative, a stay or dismissal of McDonald's action. Sending this case to arbitration and staying proceedings would hasten final resolution of McDonald's personal claims.

## CONCLUSION

In sum, Defendants have established that: (1) McDonald entered into valid arbitration agreement; (2) McDonald's claims fall within the scope of that agreement; and (3) McDonald's claims are individually arbitrable. Therefore, Defendants respectfully request that the Court stay or dismiss this action and compel McDonald to submit her claims to arbitration on an individual basis.

Date:        October 27, 2010
             New York, New York        Respectfully submitted,

                                       LITTLER MENDELSON, P.C.
                                       Attorneys for Defendants


                           By:        ____S/_____
                                       Dennis M. Brown (admission *pro hac vice* pending)
                                       Henry Lederman
                                       Michael P. Pappas
                                       900 Third Avenue
                                       New York, New York 10022-3298
                                       (212) 583-9600